## J. H. HAYS, Appellee, v. ROBERT McCORMICK, Appellant.

1. **Swamp Lands:** SELECTION BY STATE: TITLE: EVIDENCE. The title to the swamp and overflowed lands within the borders of this state passed to the state under the act of congress of 1850, whether selected by the state as required by the act or not, and in an action to quiet title based upon said act evidence is admissible to show that the land in question was, in fact, swamp or overflowed land at the date of said act, though it was never listed as such, nor was ever patented in pursuance of said act to the state or county.

2. **Taxes:** MISTAKE AS TO TITLE: ESTOPPEL. For twenty-two years prior to the time that the plaintiff acquired his title from the county, the defendant's grantor paid the taxes upon the lands in controversy under the belief that it held the title thereto, but the land during such period in fact belonged to the county, and was exempt from taxation. *Held,* that the plaintiff as the grantee of the county was not estopped from denying the defendant's title, nor was the plaintiff liable for the taxes so paid.

3. **Conveyance:** SALE OF COUNTY LANDS: BOARD OF SUPERVISORS. It appearing that the sale of the lands in controversy was duly made by the board of supervisors to the plaintiff, *held,* that the title of the plaintiff was sufficient as a basis of recovery against the defendant, though the deed received from the board was defective.

4.  **Taxes**: PAYMENT BY MISTAKE: REIMBURSEMENT. The plaintiff not having been relieved of any burden devolving upon him by the payment of the taxes above indicated, *held*, that he could not be required to reimburse the defendant therefor as a condition to having his title quieted.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

THURSDAY, MAY 28, 1891.

ACTION to quiet title to a forty-acre tract of land in Linn county. There was a decree for the plaintiff, and the defendant appeals.—*Affirmed.*

*E. S. Bailey* and *N. D. Parkhurst*, for appellant.

*Davis & Voris*, for appellee.

GRANGER, J.—The respective parties trace the origin of their titles to grants of land by the United States; that of the plaintiff being to the swamp-land grant act, approved September 28, 1850, as amended; and the defendant to the Iowa railroad grant of May 15, 1856, as amended. The claim of the record title of the parties is as follows: That of the plaintiff, the act of congress of 1850 granting to the states the swamp and overflowed lands unfit for cultivation within their boundaries; the act of the general assembly of 1853, granting to the counties the swamp and overflowed lands within their limits, which were, by the acts of congress in 1850, granted to the states; and a conveyance by the county of Linn to him, September 4, 1888. That of the defendant, the Iowa railroad grant of 1856; a certification of the land under the act by the commissioner of the general land-office, December 23, 1858, approved by the secretary of the interior, December 27, 1858, which list was, under chapter 167, Acts of the Eighteenth General Assembly, signed by the governor,

and attested by the secretary of state of Iowa, for the
Cedar Rapids & Missouri Railroad Company, which
company conveyed the land to the Iowa Railroad Land
Company, and it to the defendant, October 20, 1885.

I.    It is important that we first determine from the
evidence in the case a question of fact, as to the actual
character of the land on September 28, 1850, which
is the date of the grant to the states of the swamp lands
by congress.   No intelligent discussion of the question
can be given without quoting a volume of evidence
that would be unwarranted, and of no practical use.
Our examination of the evidence leads us to the con-
clusion that at the date of the grant the tract was over-
flowed land, within the meaning of the act referred to,
and the case will be considered with that as an estab-
lished fact.

II.    The land in question is the southwest quarter
of the northwest quarter of section 19, township 85,
range 8 west.    A stipulation in the case is
as follows:    "In order to avoid the intro-
duction of evidence upon the subject
hereinafter mentioned, it is stipulated and agreed by
and between the parties that the county of Linn, prior
to 1875, made selections of swamp lands, as shown by
the records of the register of the state land-office, which
selections so made embrace certain tracts in section 19,
township 85, range 8, in Linn county, and among them
the northwest quarter of the northwest quarter and the
southeast quarter of the northwest quarter of said
above-named section (the said selections so made, or a
copy thereof, are on file in the secretary of state's
office in the state of Iowa); and that the tract in
controversy was not included in any such selections;
and that, so far as shown by any record of the state or
county, the tract in controversy has never been patented
to the state, nor by the state to the county."    It is said
in argument that the fact that the land has never been
selected as swamp land ought to be conclusive proof

1. Swamp lands:
selection by
state: title:
evidence.

that it is not, and that a presumption should follow the acts of the officers appointed to make the selections that they did their duty. That such a presumption should obtain to the extent of devolving on the plaintiff the burden of showing that land was actually swamp or overflowed, so as to bring it within the grant, meets with our approval; but that it should obtain to the extent of becoming conclusive as against the actual facts is a rule unsupported, we think, by either reason or authority. That the grant vested the state with the title to such lands as were within the purview of the act is so well established on authority that only a reference to the fact is required. It has been held that the act by its own force operated to pass the title at once. *Allison v. Halfacre*, 11 Iowa, 450; *Railway Co. v. Smith*, 9 Wall. 95. The provisions of the act of 1850, providing for the selection of the land, have been held of no greater force than to secure an identification of the lands included in the grant, and that in effect it could not operate as a limitation upon the grant. *C. R., I. & P. Ry. Co. v. Brown*, 40 Iowa, 333. In *Railway Co. v. Smith*, 9 Wall. 95, the principal question in the case was as to the kind of evidence competent to show the character of the lands. By an act of congress land had been granted to aid in the construction of railroads in the state of Missouri, and from the grant lands granted under the act of 1850 were reserved. The case involved the identification of lands under the two acts, and the manner of doing it. To establish the reservation the swampy character of the land was to be shown. The secretary of the interior had neglected or failed to furnish the lists, and the land stood as unselected by any of the ways provided in the act. The case submits this pertinent query: "Must the state lose the land, though clearly swamp land, because that officer has neglected to do this?" The case, after referring to the difficulties under which the secretary of the interior

must labor to know the facts from which to properly certify the list, again inquires:  "Why should not the same kind of testimony, subjected to cross-examination, be competent when the issue is made in a court of justice to show that they are swamp and overflowed, and so excluded from the grant under which the plaintiff claims,—a grant which was also a gratuity?"  The following is the conclusion in the case:  "The matter to be shown is one of observation and examination; and, whether arising before the secretary, whose duty it was primarily to decide it, or before the court whose duty it became because the secretary had failed to do it, this was clearly the best evidence to be had, and was sufficient for the purpose.  Any other rule results in this: That, because the secretary of the interior has failed to discharge his duty in certifying these lands to the states, they, therefore, pass under a grant from which they are excepted beyond doubt; and this, when it can be proved, by testimony capable of producing the fullest conviction, that they were of the class excluded from the plaintiff's grant."  The appellant seems to question the correctness of the holding in *Railway Co. v. Smith*, on authority, and refers to *French v. Fyan*, 93 U. S. 169.  In that case the action was at law (ejectment). The land had been properly selected, and listed by the secretary of the interior, and a patent issued in pursuance thereof; and the plaintiff, as a grantee under the railroad grant, sought to impeach the conclusiveness of the patent by evidence showing that the land was not in fact swamp or overflowed land.  The opinion attaches particular importance to the fact that the action is one at law, and holds that the evidence in such a case is not admissible, and points to a clear distinction between a case where the title following the grant has been confirmed by a compliance with the law as to selections, and a patent given by which particular tracts are specified, and one in which no selections have been

made nor patents issued. The case refers to ·*Railway Co. v. Smith,* and, while it says that the holding in that case was ''with hesitation and with some dissent in the court,'' it. is in no way disapproved or overruled, but rather justified by additional comments referring ' to the facts under which the rule was announced

Importance in argument is given to the fact that in all the cases passed upon by this court there had been some kind of selection by the state or county of the lands in question, even though there had been neglect or failure on the part of the proper officers of the United States. But we do not see how that fact changes the rule. This land being, as we have found, under the rule sanctioned in *Railway Co. v. Smith,* ·overflowed land, the title passed at once to the state on the passage of the act of September 28, 1850. If the plaintiff is not the owner as the grantee of the state, it must be the result of a forfeiture, and under the claim now being considered the forfeiture would result from the neglect of the state to make selection. But the act granting the land does not make the title in the state depend upon any such a duty, nor does it devolve upon the state any duty in this respect. The selections by the state, as we understand, were made in pursuance of instructions from the commissioner of the general landoffice, and merely as an aid to the preparation of lists by the secretary of the interior. The fact that the state even in its own interest aided the officer of the general government to identify or select the lands belonging to it should not induce a forfeiture as the result of a mistake or oversight. The title of the state was not intended, as the grant is construed, to depend upon selections, but upon actual physical facts. The means of identification were patent to all. The railroad company took, under the grant in its aid, with knowledge ·of the law, and with opportunities equal to others ·to know facts upon which its title would depend.

Nothing in the law that we discover required the state, in order to protect its title against another and subsequent grant, which was a gratuity, to make such selections. The fact that it was swamp land, and did not belong to the railroad company is of paramount significance. The company merely took possession of and sold land to which it never had any title. The certificate of the secretary of the interior under the railway grant cannot prevail against a vested title under the grant of 1850. *Mills Co. v. Railway Co.*, 22 Iowa, 91; *Montgomery Co. v. Railway Co.*, 38 Iowa, 208.

III. The railroad company and its grantees paid taxes on the land from the year 1866 to 1888, in the aggregate sum of seventy-three dollars and fifty-three cents, and that point is urged as against the right of the plaintiff to recover. The plaintiff obtained the land from the county in September, 1888, and no taxes have ever been paid for which he was liable. During the time the taxes were paid of which complaint is made the land belonged to the county, and was exempt from taxation. *Buena Vista Co. v. Railway Co.*, 46 Iowa, 226; *Howard Co. v. Bullis*, 49 Iowa, 519. These two cases also control the question of the county being bound or estopped by the acts of its officers in the collection of taxes.

2 TAXES: mistake as to title: estoppel.

IV. The written conveyance of the land from the county to the plaintiff is as follows:

"In consideration of $1, we, J. H. Davis, James Guill and M. E. Bunting, in our official capacity as supervisors of Linn county, state of Iowa, hereby sell and convey and forever quitclaim to J. D. Hays the following described premises in Linn county, Iowa, to-wit, southwest quarter of the northwest quarter of section 19, township 85, range 8, to have and to hold the said premises unto the said J. D. Hays, his heirs and assigns forever,

3. CONVEYANCE: sale of county lands: board of supervisors.

with all and singular the appurtenances thereto belonging.

"Signed the fourth day of September, 1888.

"J. H. DAVIS,

"Chairman Board of Supervisors Linn County."

It is urged that the instrument is insufficient to pass the title, because by Code, section 305, it is provided that "no real estate shall be purchased or sold * * * without a majority of the whole board of supervisors voting therefor and consenting thereto." The following stipulation is in the record: "It is conceded that the plaintiff and the members of the board of supervisors will swear that on or about the fourth day of September, 1888, the plaintiff purchased the land in controversy from Linn county, Iowa, through the board of supervisors, for the sum of fifty dollars, which was paid at that time by the plaintiff giving his promissory note therefor, which was accepted by the board in full payment of the value and contract price." The sufficiency of the instrument of conveyance we need not discuss. It plainly appears from the record that there was between the board and the plaintiff an understanding, and such a performance by the plaintiff that he was entitled to a proper instrument of conveyance of the land, and that such a conveyance was intended. If the conveyance is insufficient it is evidently the result of a mistake, against which the law would afford relief. The title of the plaintiff is sufficient as a basis of recovery against the defendant.

V. It is lastly urged that, if the title is confirmed in the plaintiff, the taxes paid should be refunded. All the taxes were paid when the land belonged to the county, and, as he purchased the land as swamp land from the county, he had no just reason to believe there had been such payments, but, on the contrary, he had reason to believe otherwise. By the payment of the taxes the plaintiff was not relieved of a burden devolving upon him, so

4. TAXES: payment by mistake: re-imbursement.

that equity would require him to reimburse.    As to the right of the defendant elsewhere we are not to consider.   Affirmed.