THE C. R. I. & P. R. Co. v. BROWN ET AL.

1. **Swamp Lands:** GRANT TO THE STATE. The act of Congress of Sept. 28, 1850, granting swamp and overflowed lands to the State, operated to convey a present title, without a patent or formal conveyance.

2. ———: ———: MISTAKE. The title of the State's grantee to any portion thus granted is not defeated by the fact that such portion was omitted from the list of swamp lands finally approved by the Secretary of the Interior, whereby it was never patented to the State, it appearing that the omission was the result of a mistake.

3. ———: EVIDENCE. In the absence of a patent, parol evidence is admissible to show that land claimed to be swamp is embraced within the grant to the State.

*Appeal from Muscatine District Court.*

WEDNESDAY, APRIL 21.

THIS action is to recover the possession of the E. $\frac{1}{2}$, SE. $\frac{1}{4}$, Sec. 9, T. 78 N., R. 1 E., in Muscatine county. The answer of defendants denies the right and title of plaintiff, and as an equitable defense sets up that the land in controversy was a part of the swamp land grant to the State of Iowa, and the defendants hold title under Muscatine county, to which the land was granted by the State. The legislation, official acts and conveyances under which defendants claim title, are rehearsed, and it is alleged that the land has been in the actual occupation of defendants and their grantors since 1854. The defendants pray that their title may be quieted. The cause was submitted to the court without a jury, and a judgment rendered in favor of defendants. Plaintiff appeals.

*Richman & Carskadden*, for appellant.

*Hanna & Fitzgerald*, for appellees.

BECK, J.—The plaintiff claims title to the land in controversy under the act of Congress of May 15, 1856, granting certain lands to the State of Iowa to aid in the construction

of railroads, and the act of the Fifth General Assembly (Rev., §§ 1299-1313), which transferred to the Mississippi & Missouri Railroad Company a part of the lands granted by the first named act to the State. The defendants' title and claim is based upon the act of Congress of Sept. 28, 1850, granting swamp lands to the State, and upon the legislation of the State granting to the different counties the lands so acquired by the State. Rev., Chap. 47. The plaintiff claims the land to be a part of the railroad grant, while the defendants maintain it is covered by the swamp land grant. No question arises as to the regularity of the chain of title of each party under the respective grants, or at least none need be considered, for the determination of the disputed point as to which grant covers the land will settle the rights of the parties so far as this action is concerned.

I. The question thus presented for our consideration involves the construction of the statutes of Congress just mentioned.

The act of September 28, 1850, granted to the State all " swamp and overflowed lands, made thereby unfit for cultivation" which remained unsold at the time. It was made the duty of the Secretary of the Interior to make out a list and plats of the lands and transmit the same to the Governor of the State, and " at the request of the Governor, cause a patent to be issued to the State therefor; and on that patent the fee simple to said lands shall vest in the State,  *   *   *   * subject to the disposal of the legislature thereof."

We are now to inquire whether this act, in the absence of the list and patent provided for, transferred the title to the

1. SWAMP LANDS: grant to the State.

State. We think this is not an open question, and that it has been determined both by this court and the United States Supreme Court. In *Allison v. Halfacre*, 11 Iowa, 450, this court held that " the act granting the swamp lands operates *ex proprio vigore* to pass the title at once. The subsequent selection and patenting is required for the purpose of fixing their location and description." This doctrine is recognized in *Railroad Company v. Smith*, 9 Wal., 95; and the following language is used by MR. JUSTICE

MILLER, who, announcing the opinion of the court, in speaking of the very act under consideration, which was before the court for construction, says: "Now, here is a present grant by Congress of certain lands to the states within which they lie, but it is by a description which requires something more than mere references to their townships, ranges and sections, to identify them as coming within it." As tending to support this decision, see *Fremont v. U. S.*, 17 Howard, 542; *Rutherford v. Green's Heirs*, 2 Wheat., 196; *Hornsby v. U. S.*, 10 Wal., 224.

It is a well recognized rule that a legislative grant of lands will pass the title to the grantee without a patent or formal conveyance. See *Courtright v. The C. R. & M. R. R. Co.*, 35 Iowa, 386, and authorities cited.

The evidence shows that the land in suit was not included in the list of swamp lands approved finally by the Secretary of the Interior; that it was in a list prepared by the Surveyor General, and approved by the Secretary in 1852, but subsequently the approval was revoked. It appears that the contradictory action occurred in this way: The first list was prepared from the official surveys; the subsequent list was prepared by inspection and examination of the land by commissioners appointed by the State. (See *Fremont County v. B. & M. R. Co.*, 22 Iowa, 92, for a history of the legislation on this subject and an explanation of the manner of selecting lands under this grant.) In the last prepared list the land was omitted. The evidence before us shows that it was examined and selected as swamp land, but from some mistake, or from other cause, the officer charged with the duty failed to report it as such.

2. ——: ——: mistake.

In some way it appeared on the proper books of the Register of the Land office as swamp land, and was so certified by him. The county recognized it as swamp land, and in 1855 it was pre-empted and payment made upon its purchase by one under whom defendants claim title. In the same year the purchaser from the county occupied it, and it has since been improved, cultivated and occupied continuously under the title derived from the county.

It is insisted by plaintiff's counsel that, as the land was not reported in the list approved by the Secretary of the Interior as swamp land, and was not so reported by the officer charged by the State with the selection of such lands, and as the records and papers of the proper. officers do not contain evidence of these facts, proof thereof *aliunde* is not admissible, because it would be contradictory of these records.

It can hardly be admitted that the acts of mere executive officers will defeat a grant by the Government, when they are charged with no higher duty than that of identifying the subject of the grant. As we have seen, the title of the land vested in the State by the act of Congress. The subject of the grant was in existence, and the Secretary of the Interior. was charged with no other duty affecting the land than to make a list thereof and cause a patent therefor to be issued to the State. His acts did not bring the land within the grant; they simply identified the lands listed and patented as being within it. Now, if through mistake of this officer, or of others charged with the duty of imparting to him information upon the subject, he or they fail to report the lands after they have been determined and selected as those that are included in the grant, certainly such mistake cannot defeat the grant. Courts of equity, (and this case is brought within their rules by the equitable answer,) will relieve defendants from the consequences of this mistake.

But it is held by the United States Supreme Court that, under this grant, in the absence of a patent, selection and list, as provided for in the act, parol evidence is admissible to show that land is within it, and that the failure of the Secretary of the Interior to do his duty in certifying to the State the lands passing under the grant, will not prevent the courts from applying it upon evidence showing that the lands are swamped and overflowed. *Railroad Company v. Smith*, 9 Wal., 95. Certainly, if the Secretary of the Interior has failed to discharge his duty as to a part of the lands covered by the grant, through mistake of himself or of those charged with any duty touching the same, this will not defeat the grant as to such lands. The evidence clearly

3. ———; evidence.

establishes the facts that the land in question is swamp land; that in the first list approved by the Secretary of the Interior it is found; that it was not included in the second list through some mistake, probably a misdescription, of the officer charged with the survey and selection of swamp lands in Muscatine county, or through some other mistake or neglect of duty of other executive officers, either state or national.

The grant of land to the railroad under which plaintiff claims title, was subsequent to the swamp land grant, and of course cannot divest rights conferred by the prior enactment. By its terms, however, nothing of this kind is attempted, for it contains an express reservation limiting its operation to lands not disposed of by prior legislation.

In our opinion the judgment of the District Court is correct; it is, therefore,

AFFIRMED.

COLE, J., *dissenting*.